UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRANCH BANKING AND TRUST
COMPANY, a North Carolina banking
corporation,
          Plaintiff,

v.

JAMES D. HAMMER, an individual; BIG
INVESTORS, LLC, a Nevada limited
liability corporation; and DOES 1 through
10, inclusive,
     Defendants.

Case No. 2:15-cv-00573-MMD-NJK

ORDER

(Plaintiff's Motion for Summary Judgment –
ECF No. 20;
Counter-claimant's Motion for Partial
Summary Judgment – ECF No. 21)

JAMES D. HAMMER, an individual,

  Counter-claimant,

v.

BRANCH BANKING AND TRUST
COMPANY, a North Carolina banking
corporation,

  Counter-defendant.

## I.    INTRODUCTION

This case stems from the relationship between a lender, a borrower, the Federal
Deposit Insurance Corporation ("FDIC"), and an assuming bank. Before the Court are
cross motions for summary judgment from Plaintiff/Counter-defendant Branch Banking &
Trust Company ("BB&T") (ECF No. 20) and Defendant/Counter-claimant James Hammer

1  ("Hammer") and Big Investors, LLC ("Big Investors") (ECF No. 21.) The Court has also

2  reviewed each side's respective responses (ECF Nos. 22, 24) and replies (ECF Nos. 23,

3  25). Several months after the cross motions were fully briefed, Hammer and Big Investors

4  filed a supplement (without seeking leave of court pursuant to LR 7-2(g)) based on a

5  change in the material facts underlying their Partial Motion for Summary Judgment —

6  namely a change in the relationship between BB&T and the FDIC. (ECF No. 26.) BB&T

7  filed a response to the supplement. (ECF No. 31.)

8  For the reasons discussed below, BB&T's Motion is granted in part and denied in

9  part, and Hammer and Big Investors' Motion is granted in part and denied in part.

10 **II.    BACKGROUND**

11 In 2007, Colonial Bank lent Hammer $2,000,000 in exchange for a promissory note

12 ("the Hammer Loan"). (ECF No. 20-3 at 5-6.) In 2008, Hammer and Colonial Bank agreed

13 upon certain changes including a later maturity date and a reduction of the principal to

14 $1,500,000 ("the Amended Note"). (ECF No. 20-3 at 12-14.) On July 3, 2009, ten days

15 before the loan was to mature, Colonial Bank sent Hammer a notice listing the maturity

16 date, principal due ($1,464,383.29), and interest due ($6,711.75). (ECF No. 20-3 at 23.)

17 When the loan became due, Hammer did not pay.

18 On August 14, 2009, Colonial Bank folded and appointed the FDIC as receiver. The

19 FDIC and BB&T entered into a purchase-and-assumption agreement wherein BB&T

20 assumed a significant portion of Colonial Bank's assets — including the Amended Note

21 and other related debts. (ECF No. 20-2 at 2-3.) BB&T was acting as what the parties refer

22 to as an assuming bank. (*Id.* at 48.) The purchase-and-assumption agreement included a

23 provision for sharing losses, which meant that the FDIC would compensate BB&T for up

24 to 80% of the losses on Colonial Bank's assets. (*Id.* at 33.) The agreement also obligated

25 BB&T to use its best efforts to collect

26 In 2010 and 2011, Hammer and his business partner, James Meservey,

27 approached BB&T several times about settling a number of their debts. They often dealt

28 with Rich Yach ("Yach"), who was a problem loan administrator at BB&T. (ECF No. 26-1

at 99.) Yach, who had previously worked for Colonial Bank, introduced himself to Hammer and Merservey as a BB&T representative who was authorized to discuss their various loans. (ECF No. 21-1 at 22.) Hammer and Merservey proposed different plans for dealing with their debts, including resolving all of Hammer's Colonial Bank loans as part of one global resolution. (*Id.*) According to Hammer, sometime in June 2012 he and Meservey met with Yach. At that meeting Yach told Hammer and Merservey that he had not gotten a defeasance they had requested, "but the good news is that I did get the unsecured loans written off." (*Id.*) Hammer understood Yach's statements to mean that BB&T had released them from the debt associated with the Hammer Loan. Yach denies that he made any remarks indicating that Hammer was no longer responsible for the debt. (ECF No. 20 at 9.) Yach also maintains that a decision to relieve the debt would have required the approval of multiple BB&T employees and a written change to the Amended Note. (*Id.*) Hammer alleges that Yach's statements affected his decision about how to resolve other loans with BB&T. (ECF No. 14 at 4.)

On March 27, 2015, BB&T filed the Complaint against Hammer and Big Investors in this action, alleging causes of action for (1) civil conspiracy, (2) breach of the Amended Note, (3) breach of the covenant of good faith and fair dealing, and (4) unjust enrichment. (ECF No. 1.) Hammer answered and asserted counterclaims including (1) breach of the express and implied terms of the Amended Note, (2) intentional and/or negligent misrepresentation, and (3) promissory estoppel. (ECF No. 14.)

On September 14, 2016, BB&T and the FDIC agreed to terminate the shared-loss program. BB&T paid the FDIC $230,288,961 for the remaining assets. (ECF No. 26-1 at 12-19.)

BB&T now moves for summary judgment on several issues. First, BB&T asks the Court to determine, as a matter of law, that it has established Hammer is liable for breach of the Amended Note. Next, BB&T seeks summary judgment for each of Hammer's counterclaims, and lastly for a determination that the amount Hammer owes BB&T totals

///

$2,003,456.88 plus interest in the amount of $220.66 per day for every day after March 21, 2016. (ECF No. 20 at 19.)

Hammer cross moves for summary judgment on three issues. First, Hammer argues that equity demands that any judgment against him must be limited by the amount the FDIC paid BB&T for Hammer's Loan as part of the final agreement. Second, Hammer seeks dismissal of all claims against Big Investors. And finally, Hammer argues that BB&T has not produced any evidence to support its civil conspiracy claims. (ECF No. 21 at 2-3.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not

1   rely on denials in the pleadings but must produce specific evidence, through affidavits or

2   admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*,

3   929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is

4   some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783

5   (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence

6   in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

7   Although the parties may submit evidence in an inadmissible form, only evidence which

8   might be admissible at trial may be considered by a trial court in ruling on a motion for

9   summary judgment. Fed. R. Civ. P. 56(c).

10   **A.    Plaintiff's Motion for Summary Judgment**

11   BB&T asks the Court to grant summary judgment (1) on Hammer's liability for

12   BB&T's claim for breach of the Amended Note, (2) against Hammer's counterclaims, and

13   (3) on BB&T's entitlement to $2,003,456.88 under the note plus any interest accrued after

14   March 21, 2016. In evaluating BB&T's Motion, the Court resolves questions of fact in favor

15   of Hammer. Specifically, the Court considers BB&T's Motion under the assumption that

16   Yach represented to Hammer that his loan had been "written off" and that representation

17   affected Hammer's decisions about his remaining debts with BB&T. BB&T's main

18   arguments are, first, even accepting Hammer's allegations as true, it was unreasonable

19   for him to rely on an oral waiver of liability when so much money was at stake and the

20   Amended Note expressly required a waiver to be in writing and, second, many of the

21   counterclaims fail because the only damages on which they are based are attorneys' fees.

22   **1.    Hammer's Liability for Breach of the Amended Note**

23   A plaintiff in a breach of contract action must show (1) the existence of a valid

24   contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Brown

25   v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). Hammer does

26   not dispute that he agreed to the Amended Note and failed to pay the amount owed on

27   July 13, 2009, when the Amended Note matured. (ECF No. 20-3 at 2-3; ECF No. 22 at 4.)

28   However, he presents several defenses against liability. Hammer's first line of argument,

1   and the core of his counterclaims, is that Yach's representation that the Hammer Loan
2   was being "written off" creates a genuine issue of material fact about Hammer's liability.
3   Hammer also argues that, aside from Yach's statements, BB&T failed to comply with the
4   conditions in the Amended Note. (ECF No. 22 at 11.) Neither line of argument is
5   persuasive.

6        The Amended Note contains two sections relevant to Hammer's argument. Under
7   the section entitled LENDER'S RIGHTS the Amended Note states: "Upon default, Lender
8   may declare the entire unpaid principal balance under this Agreement and all accrued
9   unpaid interest immediately due, and the Borrower will pay that amount." (ECF No. 20-3
10  at 12.) Under the section entitled MISCELLANEOUS PROVISIONS the Amended Note
11  contains the following relevant provisions:

12        Lender may delay or forgo enforcing any of its rights or remedies under this
          Agreement without losing them. Borrower and any other person who signs,
13        guarantees or endorses this Agreement, to the extent allowed by law, waive
          presentment, demand for payment, and notice of dishonor. Upon any
14        change in the terms of this Agreement, and unless otherwise expressly
          stated in writing, no party who signs this Agreement, whether as maker,
15        guarantor, accommodation maker or endorser, shall be released from
          liability.
16

17  (*Id.* at 13)

18        Even accepting Hammer's account of Yach's statements as true, he is still liable for
19  breach of the Amended Note. The express terms of the agreement provide that BB&T
20  "may" declare the entire balance due. This provision does not require BB&T to provide
21  notice or a demand. If that provision were not clear enough, the Amended Note specifically
22  waives "presentment, demand for payment, and notice of dishonor" for the borrower.
23  Hammer points the Court to a number of cases demonstrating the possibility of an oral
24  waiver of a written nonwaiver clause. (ECF No. 22 at 14.) While it is true that an oral waiver
25  is possible in limited circumstances, those circumstances do not exist in this case. The
26  parties' intent about amount owed and the date of maturity when they entered the
27  agreement is not in question. And Yach's alleged statements only came years after
28  Hammer had defaulted, i.e. breached the Amended Note. (*See* ECF No. 20-3 at 12

1  (default occurs when "Borrower fails to make any payment when due under the
2  Indebtedness.").)

3        The timing of Hammer's initial breach and of Yach's subsequent alleged statements
4  also renders Hammer's affirmative defenses largely inapplicable to the question of liability.
5  Even assuming Yach's June 2012 statements amounted to fraud or a breach of the implied
6  covenant of good faith and fair dealing, Hammer does not explain, nor does the Court see,
7  any reason that would excuse Hammer's duty to perform on July 13, 2009. While the
8  affirmative defenses and counterclaims may be relevant to an ultimate determination of
9  damages, they do not affect the conclusion that Hammer has breached the Amended
10  Note.

11        Therefore, the Court finds that BB&T has demonstrated an absence of material
12  factual disputes in regards to Hammer's liability for breach of the Amended Note, and the
13  Court grant's BB&T's Motion on that claim.

14                        **2.      Damages for Breach of the Note**

15        BB&T also asks the Court to find that Hammer's indebtedness is at least
16  $2,003,456 (plus any additional interest that has accrued since March 21, 2016). (ECF
17  No. 20 at 3.) However, as discussed below the Court finds that Yach's alleged statements
18  create issues of material fact which may affect Hammer's total indebtedness, therefore
19  the Court declines to grant BB&T's request to determine an exact amount of damages.

20                        **3.      Hammer's Counterclaims**

21        Finally, BB&T asks the Court to grant summary judgment against each of Hammer's
22  counterclaims. Hammer has asserted counterclaims for breach of the Amended Note,
23  breach of the implied covenant of good faith and fair dealing, fraud, negligent
24  misrepresentation, and promissory estoppel.

25                        **a.      Breach of the Express and Implied Terms of the Contract**

26        For the reasons discussed above, the Court finds that as a matter of law BB&T
27  complied with the express terms of the Amended Note, and therefore Hammer's
28  counterclaim for breach of contract fails.

In Nevada "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its *enforcement*." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205) (emphasis added). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, *Inc.*, 808 P.2d 919, 923 (Nev. 1991). To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must therefore show: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Id.* Whether a party has acted in good faith is a question of fact. *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998).

Hammer's counterclaim is based on the argument that Yach's alleged misleading statements amount to BB&T acting in bad faith while enforcing the terms of the Amended Note. Thus, according to Hammer, even if the Court finds that BB&T has complied with the express terms of the Amended Note, Hammer may still be entitled to damages based on Yach's behavior.

BB&T argues that, as a matter of law, Hammer cannot demonstrate justifiable reliance because relying on an oral waiver of a $1.5 million debt, especially in the face of contradictory written terms, is patently unreasonable. (ECF No. 20 at 16.) Hammer responds that the question about whether a party was justified in relying on a representation is typically a factual one, and given the context of the statements, a reasonable juror could easily conclude that Hammer's behavior was rational. (ECF No. 22 at 19.)

///

///

The Court, guided both by the summary judgment standard and by the legal maxim that justifiable reliance is typically a question of fact,[1] finds that Hammer's reliance on Yach's statements, though perhaps suspiciously naïve, presents a factual question for a jury. Viewing the facts in the light most favorable to Hammer, the man responsible for speaking on behalf of BB&T during debt negotiations told him that certain obligations were being "written off." This representation took place amidst a discussion of several other debts totaling a great deal of money. Hammer's claim that he reasonably relied on Yach's alleged statements rests largely on an evaluation of both Hammer and Yach's respective credibility — which is an evaluation that the Court cannot make on summary judgment.

In regards to damages, BB&T argues that the only damages Hammer has identified are the costs of defending against BB&T's suit, including his attorney's fees. Attorney's fees, as BB&T points out, are not an actual injury under Nevada law except in very limited circumstances that do not apply here. *See Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n,* 35 P.3d 964, 970 (Nev. 2001) ("[T]he mere fact that a party was forced to file or defend a lawsuit is insufficient to support an award of attorney fees as damages."); *see also Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 73 (Nev. 1994) (reversing an attorney fees award for defendants where district court found the litigation was "without reasonable grounds and/or to harass" but did not base the award on any "rule, statute, or contract.").

However, in both his counterclaims and response to BB&T's Motion, Hammer also identifies interests and fees he has accrued due to his assumption that the Hammer Loan was forgiven — in other words the difference between what he owed on the day he met with Yach and what he owes today. (*See* ECF No. 14 at 8 ¶¶ 16, 17; ECF No. 22 at 16 ("but-for Rick Yach's representation . . . Mr. Hammer would have conducted himself differently, including avoiding interest accruing and the cost of litigation.")) These damages
///

---

[1]*See, e.g.*, *Epperson v. Roloff*, 719 P.2d 799, 803 (Nev. 1986); *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992)

are cognizable in contract as reliance damages. *See Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) ("Generally, the remedy for a breach of the implied covenants of good faith and fair dealing is limited to contractual remedies."); *Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747, 805 (Fed. Cl. 2013) (upholding an award of reliance damages for breach of the covenant of good faith and fair dealing). Therefore, the Court finds that Hammer has identified appropriate actual damages in addition to the special damages he seeks.

Hammer has identified a material dispute of fact underlying his counterclaim for breach of the implied covenant of good faith and fair dealing. For the reasons discussed above, BB&T's Motion is granted with respect to Hammer's counterclaim for breach of the Amended Note and denied with respect to Hammer's counterclaim for breach of the implied covenant of good faith and fair dealing.

### b.   Fraud and Negligent Misrepresentation

BB&T argues that Hammer's counterclaims for fraud and negligent misrepresentation fail for the same reason as Hammer's contract claims: he cannot show justifiable reliance or actual damages. The Court finds these arguments unpersuasive for the same reasons. Hammer has identified a material question of fact and appropriate actual damages. Hammer's fraud counterclaims present an alternative viable theory to recover the interest accrued after Yach's statements. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) ("[A] plaintiff can assert a contractual claim and also one for fraud based on the facts surrounding the contract's execution and performance.").

Therefore, BB&T's Motion is denied with respect to Hammer's counterclaims for fraud and negligent misrepresentation.

### c.   Promissory Estoppel

"To establish promissory estoppel four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was

so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). "Detrimental reliance sufficient to create an estoppel does not necessarily require a showing of financial or pecuniary loss." *Alpark Distrib., Inc. v. Poole*, 600 P.2d 229, 231 (Nev. 1979). Further, a court has discretion in shaping an appropriate remedy for a promissory estoppel claim — including an award of reliance damages, which in this case might take the form of interest accrued after Yach's statements were made. *See Dynalectric Co. of Nevada v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286, 289 (Nev. 2011) ("Nevada follows the doctrine of promissory estoppel articulated in the Restatement (Second) of Contracts . . . under the Restatement, an award of expectation damages is often an appropriate remedy . . . [b]ut, in other instances, reliance damages or restitutionary damages may be more suitable.").

Just as with Hammer's breach of the implied covenant claim, even if Yach's alleged statements did not release Hammer from his debt as a legal matter, they may have excused him from the additional debt he acquired while relying on them. Contrary to BB&T's assertion that Hammer has failed to identify a legal basis for his request to offset damages by the amount of interest that accrued after Yach's claimed statements, this request fits squarely into his promissory estoppel counterclaim. Hammer has alleged that BB&T, through Yach, told him that his Hammer Loan debt was being written off. Hammer alleges he did not take any further action, and accrued fees and interest, on the Hammer Loan because he relied on Yach's representation. (ECF No. 14 at 8-9.) BB&T's additional argument about justifiable reliance is rejected for the reasons already discussed.

For these reasons the Court finds that Hammer's promissory estoppel counterclaim is an appropriate legal vehicle for his request that his liability be reduced by any amount of interest accrued after Yach's statements. Hammer has identified a dispute of material fact underlying this counterclaim, and therefore BB&T's Motion is denied on this count.

///

///

1

**B.      Defendant's Motion for Partial Summary Judgment**

2       In its response to Hammer's Motion, BB&T agrees to drop its civil conspiracy claim

3  and all claims against Big Investors. (ECF No. 24 at 3.) Therefore, Hammer's Motion is

4  granted with respect to those claims.

5       Hammer's remaining argument is that the Court should reduce any liability by the

6  amount the FDIC reimbursed BB&T for the Hammer Loan. Originally, Hammer's argument

7  was based on the possibility that BB&T could obtain a judgment, wait until the end of its

8  loss sharing agreement with the FDIC, collect the agreed upon loss share amount from

9  the FDIC, and then, after parting ways with the FDIC, enforce its judgment for the full

10  amount of the loan against Hammer. (ECF No. 21 at 5.) However, on September 14, 2016,

11  after the parties completed briefing on Hammer's Motion, BB&T and the FDIC agreed to

12  end their relationship earlier than expected. BB&T paid the FDIC $230,288,961 in

13  exchange for the remaining assets from the shared loss agreement. (ECF No. 26-1 at 12-

14  19.)

15       Hammer argues that it is now an "absolute certainty that if BB&T is awarded the

16  relief it has requested in this action . . . then BB&T will receive a windfall in the form of

17  double payment." (ECF No. 26 at 3.) Hammer, however, does not provide any sort of

18  explanation of why, as a matter of mechanics, he believes this windfall will occur, nor any

19  authority to support why, as a matter of law, he would be entitled to some sort of offset

20  after the sale. Hammer simply provides a copy of the Termination Agreement and

21  corresponding press release from BB&T and explains that the posture of this case is now

22  different from the several cases BB&T has cited wherein courts have rejected Hammer's

23  earlier "double dipping" argument. (ECF No. 26 at 3-4; ECF No. 26-1 at 12-19.)

24       Hammer is correct that the case is now on a different footing than the cases cited

25  by BB&T. But he still has not provided any authority to support the proposition that BB&T,

26  which paid $230,288,961 to the FDIC for the remaining shared-loss assets which included

27  the loan at issue in this case, must reduce its collection by some unspecified amount.

28  ///

1   Hammer has failed to establish that he is entitled to a reduction in liability as a matter of
2   law. His Motion is denied as it relates to this request.

3         **C.    Summary**

4         The Court finds that Hammer has breached the Amended Note and is liable for at
5   least the amount due under its terms before Yach's alleged statements suggesting that
6   the loans had been "written off." The total amount owed under the Amended Note is
7   dependent on the resolution of factual issues — namely whether Yach made the
8   statements in question and whether Hammer's reliance on Yach's statements was
9   reasonable. The resolution of these factual questions will determine Hammer's liability for
10  any interest or fees that accrued after Yach's statements, but does not affect his liability
11  under the terms of the Amended Note up to that date. Hammer has failed to establish that
12  his liability should be limited due to the Termination Agreement between the FDIC and
13  BB&T.

14  **IV.   CONCLUSION**

15        The Court notes that the parties made several arguments and cited to several cases
16  not discussed above. The Court has reviewed these arguments and cases and determines
17  that they do not warrant discussion as they do not affect the outcome of these Motions.

18        It is therefore ordered that Plaintiff's Motion for Summary Judgment (ECF No. 20)
19  is granted in part and denied in part. It is granted with respect to Plaintiff's claim for breach
20  of the Amended Note and Defendant's counterclaim for breach of the Amended Note. It is
21  denied in all other respects.

22        It is further ordered that Defendants' Motion for Partial Summary Judgment (ECF
23  No. 21) is granted in part and denied in part. It is granted with respect to Plaintiff's civil
24  conspiracy claim and all claims against Defendant Big Investors, LLC. It is denied in all
25  other respects.

26        DATED THIS 29th day of March 2017.

27

28  MIRANDA M. DU
    UNITED STATES DISTRICT JUDGE